UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN COOPER, Personal Representative
of the Estate of Demetrius Morton, Deceased,

                                                                   CASE NO. 04-72849
    Plaintiff,                                     HON. LAWRENCE P. ZATKOFF

v.

WASHTENAW COUNTY, CITY OF ANN ARBOR,
WASHTENAW COUNTY DEPUTY SERGEANT
ANTHONY WOODFORD, WASHTENAW COUNTY
DEPUTY SHERIFF OFFICER PAMELA RACITI,
WASHTENAW COUNTY SHERIFF OFFICER
EUGENE HAHN, ANN ARBOR POLICE OFFICER
MICHAEL WATCHOWSKI, ANN ARBOR POLICE
OFFICER STEVE LAWRENCE, Individually,

    Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 14, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Washtenaw County Defendants' and Ann Arbor Defendants' Motions for Summary Judgment. Plaintiff has responded and Defendants have replied to the response. In addition, Washtenaw County Defendants have filed a Motion to Strike the Expert Testimony of Ken Katsaris. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral

argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motions for Summary Judgment are GRANTED.

## II. BACKGROUND

On June 12, 2003, after having been sentenced to 93 days in jail for domestic assault and battery, Demetrius Morton committed suicide by hanging himself in a holding cell at the Washtenaw County Courthouse. By the present complaint, Plaintiff Dawn Cooper, as personal representative of Morton, alleges that the Ann Arbor Defendants (City of Ann Arbor and Ann Arbor Police Officers Michael Watchowski and Steve Lawrence) and the Washtenaw County Defendants (Washtenaw County and Washtenaw County Deputies Anthony Woodford, Pamela Raciti, and Eugene Hahn) violated Morton's constitutional rights in failing to prevent his suicide.

On March 3, 2003, Demetrius Morton, age 35, pled guilty to domestic assault and battery. Morton was released on personal recognizance and ordered to return for sentencing on April 3, 2003. Morton failed to appear for sentencing and a bench warrant was issued for his arrest. He was arrested by Dearborn police on the warrant on June 3, 2003. Dearborn police and Ann Arbor police agreed to meet in Belleville later that day so that Morton could be transferred into the custody of the Ann Arbor police.

During the prisoner exchange, Morton attempted to escape and was caught. He became violent towards himself and the officers. Ann Arbor police transported him to the University of Michigan for a physical and psychological evaluation. The evaluation revealed that Morton's problems were related to drug abuse and that no hospitalization was needed. Morton's hospital

discharge instructed that Morton be kept under close observation so he could not hurt himself.

Upon discharge on June 3, 2003, Morton was transported by Ann Arbor police to the 15th District Court for arraignment. In court, Morton again became physically violent toward himself, banging his head on the table and exclaiming that he wanted to kill himself. Morton was physically restrained by the officers present and assisted out of the courtroom. The Court's June 3, 2003 disposition indicated that Morton should not be released on bond and that he should be placed on suicide watch until his sentencing, scheduled for June 12, 2003. Ann Arbor police officers transported Morton to the Washtenaw County Jail, where he was booked and placed on suicide precaution. Morton remained at the Washtenaw County Jail from June 3-12, and was housed in an observation cell for continual, 24-hour observation. During that time, Morton was repeatedly given medical evaluations, and on June 8, 2003, Morton was cleared of any alcohol/narcotic withdrawals.

On June 12, 2003, Ann Arbor Police Officers Watchowski and Lawrence arrived at the county jail to transport Morton for his sentencing hearing. When the officers arrived, Morton was dressed in a "bam bam" suicide protection gown. Morton was then changed into a white 2-piece uniform and transported to the court for sentencing. The transporting officers encountered no problems as they transported Morton to the Washtenaw County Courthouse.

Upon arrival at the courthouse, Morton was placed in a holding cell while he waited for the case to be called. Morton was brought into the courtroom at 10 a.m. Morton apologized to the judge for his behavior on June 3, 2003 and asked to be released. The judge sentenced Morton to 93 days in jail with 10 days credit for time served. Morton asked the judge whether he would be finished with the case once he had served his time and would receive no probation. The judge responded affirmatively. The hearing ended at approximately 10:05 a.m and Morton was returned

3

to his holding cell. The Judge's disposition was silent as to whether Morton should be placed on suicide watch.

At 11:13 a.m., the court completed its docket and Officers Watchowski and Lawrence returned to the holding cell where they had placed Morton. When the officers entered the holding cell, they observed Morton hanging from the cell bars with his jail issued shirt. The officers immediately took Morton down and attempted to resuscitate him. He was transported to the University of Michigan hospital and pronounced dead at 11:55 a.m. His death was classified as a suicide.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of

material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.  *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

Plaintiff's Complaint asserts constitutional violations pursuant to the Fourth, Eighth, and Fourteenth Amendments.  *See* Complaint, ¶ 34.  Because Morton's death occurred subsequent to sentencing, Plaintiff's Complaint is properly analyzed under the Eighth Amendment.  *See Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001).  Accordingly, Plaintiff's claims pursuant to the Fourth and Fourteenth Amendments should be dismissed.

The primary question before this Court is whether Defendants violated the Eighth Amendment by acting with "deliberate indifference" to the safety of Demetrius Morton.  Because each of the Defendants had differing roles regarding the confinement of Morton, the Court will address each Defendant individually.

**A. Individual Defendants**

The Supreme Court addressed the Eight Amendment's "deliberate indifference" standard in *Farmer v. Brennan*, 511 U.S. 825 (1994).  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Id*. at 829.  The

"deliberate indifference" standard encompasses both an objective and subjective element and "describes a state of mind more blameworthy than negligence." *Id*. at 835. In *Farmer*, the Court held that the "deliberate indifference" standard is not met unless a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

With this standard in mind, the Court now analyzes each individual Defendant.

**1. Washtenaw County Sergeant Anthony Woodford**

Sergeant Woodford was the transport sergeant for the Washtenaw County jail. As a practice, Sergeant Woodford would print out the court docket/ transport log each day. The Ann Arbor police officers would then arrive the next morning, look at the transport log, and call the court to confirm which inmates they would be transporting. According to Ann Arbor police officer Steve Lawrence, on the day of Morton's transport, Sergeant Woodford spoke with the Ann Arbor transport officers, Officers Watchowski and Lawrence, and told them that Morton was doing fine. *See* Exhibit 3, Lawrence Deposition. Sergeant Woodford did not tell the transport officers that Morton was on suicide watch. The Washtenaw County Defendants assert that Sergeant Woodford had no direct contact with Demetrius Morton and that summary judgment is appropriate in his favor. *See* Washtenaw County Brief, at 6.

Plaintiff offers no specific response to Washtenaw County Defendants' assertion that Woodford should be granted summary judgment. Instead, Plaintiff asserts that the Washtenaw County individual Defendants should be subject to liability because they each failed to tell the Ann Arbor police officers that Morton was suicidal. *See* Plaintiff's Response Brief to Washtenaw

6

County, at 5.

Sergeant Woodford's failure to tell the Ann Arbor police officers that Morton was suicidal indicates, at most, simple negligence. Plaintiff has presented no evidence to indicate that it was Sergeant Woodford's responsibility to relay information regarding prisoner status during a prisoner transfer. Furthermore, even if such a duty existed, Plaintiff has presented no evidence that Sergeant Woodford consciously disregarded any risk to Demetrius Morton's safety. *See Farmer*, 511 U.S. at 839. Accordingly, the Court finds that Sergeant Woodford did not act with "deliberate indifference" towards Demetrius Morton and that summary judgment should be granted in Sergeant Woodford's favor.

### 2. Washtenaw Deputy Pamela Raciti

Deputy Raciti booked Demetrius Morton in the Washtenaw County Jail on June 3, 2003, and placed him on suicide precaution pursuant to the June 3, 2003 Court disposition. *See* Washtenaw County Brief, at 6. When the Ann Arbor police officers arrived on June 12, 2003, Officer Watchowski asked Deputy Raciti how Morton was doing. Deputy Raciti responded that he was doing fine because he hadn't been doing anything wrong during his stay at the jail. The Washtenaw County Defendants assert that Deputy Raciti is entitled to summary judgment because she only had peripheral contact with the transporting officer, Officer Watchowski, and she had no direct contact with Morton at the time of transport. *See id*.

Plaintiff again offers no specific response as to Deputy Raciti's factual involvement in Morton's transport, and merely offers that the individual Washtenaw County Defendants should be liable because they failed to inform the transport officers that Morton was suicidal. As was the case with Sergeant Woodford, Deputy Raciti's inaction at most amounts to simple negligence. There is

7

no evidence that she consciously disregarded any risks to Demetrius Morton. Because there is no evidence before the Court that Deputy Raciti acted with "deliberate indifference," summary judgment should be granted in Deputy Raciti's favor.

### 3. Washtenaw County Corrections Officer Eugene Hahn

Officer Hahn's only involvement with the transportation of Demetrius Morton was that he prepared the transportation log concerning the transportation of Demetrius Morton on June 12, 2003. *See* Washtenaw County Brief, at 7. Hahn wrote the number "4" next to Morton's name in reference to Morton's prisoner classification, but asserts that this number has nothing to do with Morton's placement on observation or suicide precautions. Officer Hahn had no direct contact with Morton.

Because Plaintiff has offered no evidence of "deliberate indifference" based on Officer Hahn's involvement, and for similar reasons as discussed above regarding Sergeant Woodford and Deputy Raciti, Officer Hahn should be granted summary judgment.

### 4. Ann Arbor Officers Lawrence and Watchowski

Ann Arbor police officers Steve Lawrence and Michael Watchowski were responsible for transporting Demetrius Morton from the Washtenaw County Jail to the Washtenaw County Courthouse for his sentencing on June 12, 2003. When the officers arrived they spoke with transport sergeant, Sergeant Woodford. Woodford told the officers that Morton was doing fine and that they should not have any problems with them. *See* Exhibit 3, Lawrence Deposition. Officer Watchowski also spoke briefly with Deputy Raciti, who told him that Morton was doing fine.

When the officers first observed Morton at the jail, Morton was being held in an observation cell. Both officers asserted that this information was not sufficient to inform them that Morton was on suicide watch because there are multiple reasons why a prisoner could be held in an observation

8

cell. *See* Ann Arbor Brief, at 6. Likewise, the officers assert that the "bam bam" gown Morton was initially wearing, and later the white uniform that Morton changed into, did not indicate to them that he was on suicide watch. *Id*. at 7.

Both at the jail and while proceeding from the jail to the courthouse, Morton engaged in small talk with the transporting officers. At no time did Morton give the officers any reason to believe that he was still suicidal. Deputy Watchowski testified at his deposition: "I talked to him pretty much throughout the whole thing. Right after his sentencing I talked to him and he seemed normal as me and you talking right now. There was no indication that he was going to, you know, do this thing to himself." Exhibit 2, Watchowski Dep. at 58. While at court, Morton civilly engaged the judge and accepted his prison sentence. He exhibited none of the erratic behavior which he had shown at the June 3, 2003 hearing a week before. Following the sentencing, the officers returned Morton to the holding cell. When they returned a little more than an hour later, they discovered that Morton had hanged himself.

Essentially, Officers Watchowski and Lawrence argue that they did not know that Morton was suicidal and that, accordingly, they do not satisfy the "deliberate indifference" standard. Plaintiff responds that a reasonable factfinder could conclude that the officers were aware or should have been aware of his suicidal tendencies. As evidence of this, Plaintiff relies on the expert testimony of Ken Katsaris. Additionally, Plaintiff argues that Watchowski and Lawrence exhibited "deliberate indifference" by violating Ann Arbor policies which require the observation of prisoners every thirty minutes, and suicidal prisoners every fifteen minutes.

The Court disagrees with Plaintiff's analysis and finds that there is no evidence that Officers Watchowski and Lawrence actually drew the inference that Morton was suicidal. Even if the Court

9

accepts Ken Katsaris' expert testimony[1] that the officers should have known that Morton was suicidal, this only satisfies the objective component of the "deliberate indifference" analysis. Plaintiff has presented no evidence regarding the subjective component, whether Officers Watchowski and Lawrence actually drew the inference that Morton was suicidal. Defendants have presented the Court with abundant evidence that the Officers did not believe Morton was suicidal. No one at the Washtenaw County jail told them Morton was suicidal. Furthermore, Morton behaved during both the transport and sentencing and displayed none of the tendencies which led to the initial categorization of him as being suicidal.

Plaintiff's second line of argument, that Officers Watchowski and Lawrence violated Ann Arbor policy, is similarly faulty. At most, the officers failure to take Morton's shirt from him and failure to observe him at the proper time frame indicate that the officers were negligent. In the recently decided case of *Bradley v. City of Ferndale*, 2005 WL 2173780, (6th Cir. 2005), the Court reversed the district court for placing too much emphasis the violation of internal policy:

> Therefore, the district court erred when it based its denial of the defendant's motion for summary judgment solely upon the defendants' alleged failure to follow Ferndale's internal procedures. Instead, the court must ask whether the plaintiff has provided proof that the defendants ***subjectively perceived facts*** from which they could draw an inference that their individual actions would increase the risk of Bradley's suicide, and that they ultimately ***acted in consciously disregard*** of that risk. [emphasis added.]

In the present case, there is no evidence that Officers Watchowski and Lawrence consciously disregarded the risk that Demetrius Morton would commit suicide.

---

[1] The Ann Arbor Defendants have moved the Court for an order striking Katsaris' expert testimony. The Court believes that Katsaris' testimony raises serious questions as to its admissibility, but because the Court does not believe it is essential to the resolution of the Motion for Summary Judgment, the Court will not address the Motion to Strike.

For these reasons, summary judgment should be granted in favor of Officers Watchowski and Lawrence.

**B. Washtenaw County and City of Ann Arbor**

Lastly, Plaintiff argues that Washtenaw County and the City of Ann Arbor have failed to properly train the individual defendants in violation of § 1983. Plaintiff's argument also fails. "[W]hen a plaintiff alleges that a municipal defendant has failed to properly train the individual defendants, the municipal defendant cannot be held liable under § 1983 when the plaintiff has failed to establish a constitutional violation by the individual defendants." *Crocker v. County of McComb*, 285 F. Supp. 2d 971, 977 (E.D. Mich. 2003); *see also Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

For this reason, Washtenaw County and the City of Ann Arbor should be granted summary judgment.

### V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS the Washtenaw County Defendants' and the Ann Arbor Defendants' Motions for Summary Judgment.

IT IS SO ORDERED.

    s/Lawrence P. Zatkoff
    LAWRENCE P. ZATKOFF
    UNITED STATES DISTRICT JUDGE

Dated: November 14, 2005

CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 14, 2005.

                                    s/Marie E. Verlinde  
                                    Case Manager  
                                    (810) 984-3290